## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRIS COOPER, STARDUST389, INC., and AIRLOCK389, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:24-cv-00832-MN |
| PATRICIA BELLASALMA, SHANNON SMITH-CROWLEY, RICHARD CABAEL, DAVID TRAUB, KEATH SPEARS, DENIS G. LUCINDO, PAUL PARMON, MICHAEL ARIZOLA, DIVYESH MAKWANA, CATERINA NETTI, CARIE ELENA EDWARDS, LAURA DUNPHY, COLE SMITH-CROWLEY, SANDRA WILLIAMS, TORI TRASK, BLANE A. SMITH, THE LAW OFFICE OF BLANE A. SMITH, MAGALY ZAGAL, CALIFORNIA CAPITOLO STRATEGIES LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS SHANNON SMITH-CROWLEY, COLE SMITH-CROWLEY,
BLANE A. SMITH AND THE LAW OFFICE OF BLANE A. SMITH'S
<u>OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST THEM</u>**

**KAUFMAN DOLOWICH LLP**

/s/*Kristen S. Swift*_____
Kristen S. Swift (No.6077)
222 Delaware Avenue, Suite 720
Wilmington, DE 19801
(302) 482-8662

## TABLE OF CONTENTS

**NATURE AND STAGE OF THE CASE** ................................................................... **1**

**SUMMARY OF ARGUMENT** ................................................................................. **1**

**STATEMENT OF ALLEGED FACTS** ..................................................... **3**

**ARGUMENT** ............................................................................................................. **7**

   **I.**    **THIS COURT LACKS JURISDICTION** ......................................... **7**

     **A.**    **The Court Lacks Subject Matter Jurisdiction Because Plaintiffs Fail to State a Lanham Act Claim** ........................................ **7**

     **B.**    **The Court Lacks Personal Jurisdiction Over the Moving Defendants** ......................................................................................... **9**

   **II.**   **PLAINTIFFS DO NOT STATE PLAUSIBLE CLAIMS AGAINST THE MOVING DEFENDANTS** ................................................... **11**

     **A.**    **The Breach of Contract Claims Fail to Provide Fundamental Notice and Cannot Be Reconciled With the Allegations that the Contracts Were Improperly Formed** ...................................... **11**

     **B.**    **Unjust Enrichment is not Sufficiently or Alternatively Plead** ................ **13**

     **C.**   **Plaintiffs Do Not Meet the Heightened Pleading Standard for Fraud or Fraudulent Inducement** ............................................... **144**

     **D.**   **No Contracts Were Allegedly Breached Due to Alleged Tortious Interference** ........................................................................... **16**

     **E.**   **Aiding and Abetting Misappropriation Fails to Plead Actual Knowledge and Wrongful Act** ..................................................... **17**

     **F.**   **Plaintiffs Fail to State A Claim for Legal Malpractice Against Cole Smith-Crowley and Shannon Smith-Crowley (Which Claim Against Her Is Time-Barred)** ....................................... **18**

     **G.**   **Civil Conspiracy Is Unsustainable Without an Underlying Tort and None Exists** ............................................................................... **19**

     **H.**   **Injunctive Relief is Not a Viable Claim Against Shannon Smith-Crowley or Cole Smith-Crowley** ....................................... **200**

   **CONCLUSION** ................................................................................... **20**

# TABLE OF AUTHORITIES

**Page**(s)

**Cases**

*Acco Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545, *rearg. denied*, 2024 WL 3043311 (D. Del.). ....................................................................... 9,10

*ANI Pharm., Inc. v. Method Pharm.*, 2019 WL 176339 (D. Del.) ................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................ 11

*Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444 (Del. 2013)............................................. 16

*Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247 (D. Del.)......................................... 17, 18

*Buck v. Viking Mangt. Co. LLC*, 2021 WL 673459 (Del. Super.) ................................. 11

*Canterbury Women's Health Care, Inc. v. Rucker*, 2006 WL 3477779 (Cal. Super.) .................. 19

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat'l Ass'n*, 2011 WL 864421 (D. Del.) ....................................... 17

*Engel v. Pech*, 95 Cal. App.5th 1227 (Cal. App. 2d 2023) ......................................... 19

*Foote v. Mehrotra*, 2023 WL 7214728 (D. Del.) ....................................................... 8

*Foxborough v. Van Atta*, 26 Cal. App.4th 217 (Cal. App. 1994)................................. 19

*Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F. Supp. 392 (D. Del. 1993).................................................. 16

*Katz v. Apuzzo*, 2019 WL 3219513 (D. Del. 2019)..................................................... 9

*Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872 (Del. Ch. 2009) .................................. 19

*Market America, Inc. v. Google, Inc.*, 2010 WL 3156044 (D. Del. 2010)..................... 16

*Monsanto Co. v. Sygenta Seeds, Inc.*, 443 F. Supp.2d 648 (D. Del. 2006) .................... 8

*Mukasa v. Balick & Balick*, 2002 WL 1971921 (D. Del.) ........................................... 19

*Patrick v. Eastern Spec. Fin., Inc.*, 2015 WL834107, at *2 (D. Del.) .......................... 20

*Pedrick v. Roten*, 70 F. Supp.3d 638 (D. Del. 2014) ................................................. 13

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011) ............................ 8

*Rader v. ShareBuilder Corp.*, 772 F. Supp.2d 599 (D. Del. 2011) ................................. 19

*REI Holdings, LLC v. LienClear*, 2019 WL 3546881 (D. Del.) ............................... 14-15

*Reklam v. Bellator Sport Worldwide, LLC*, 2017 WL 5172397 (D. Del.) .............................. 11-12

*Tolliver v. Qlarant Quality Solutions, Inc.*, 2022 WL 17097602 (Del. Super.) ............................ 10

*Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043 (Del. Super. 2001) ................................. 19

*Travelers Cas. & Sur. Co. of America v. Blackbaud, Inc.*, 2024 WL 1298762 (Del Super.) .. 11, 12

*Tusha v. Pediatric Assocs.*, 2022 WL 823583 (D. Del.) ......................................... 19

*vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512 (D. Del.) ................................. 16

*Wood v. Coastal States Gas Corp.*, 401 A.2d 932 (Del. 1979) ..................................... 14

**Statutes**

10 Del. C. § 3104 (C)(1)-(4) ............................................................ 9

10 Del. Code Ann. § 8106 .............................................................. 19

15 U.S.C. §1125(a)(1) .................................................................. 7

28 U.S.C. §1331 ....................................................................... 7

West's Ann. Cal. C.C.P. § 340.6 (2020) ................................................ 19

**Rules**

Fed. R. Civ. P. 4(c)(1) .................................................................. 1

Fed. R. Civ. P. 8(a)(2) .................................................................. 11

Fed. R. Civ. P. Rule 8(a) ............................................................... 12

Fed. R. Civ. P. Rule 12(b)(2) ............................................................ 9

Rule 12(b)(6) .......................................................................... 11

## NATURE AND STAGE OF THE CASE

On July 18, 2024, Plaintiffs Chris Cooper ("Cooper"), Stardust389, Inc. ("Stardust") and Airlock389, Inc. ("Airlock") (Stardust and Airlock, together, the "Corporate Plaintiffs") filed a Verified Complaint (D.I. #1).  The next day, July 19, 2024, Plaintiffs filed the instant Amended Complaint ("AC") (D.I. #4) against 19 defendants, including Shannon Smith-Crowley, Cole Smith-Crowley, Blane A. Smith and The Law Office of Blane A. Smith (together, "Moving Defendants"), without serving the Smith Defendants with a Summons as required by Fed. R. Civ. P. 4(c)(1). On November 4, 2024, Smith Defendants filed a Waiver of Service of summons, whereby their responsive pleadings are due on December 31, 2024. (D.I. #11). Plaintiffs have until February 18, 2025, to serve the Amended Complaint on the other defendants. (D.I. #13). Moving Defendants offer this Opening Brief in support of their Motion to Dismiss the Amended Complaint for lack of jurisdiction and for failure to state the claims against them.

## SUMMARY OF ARGUMENT

The convoluted 185-page Amended Complaint purports to tell the story of Corporate Plaintiffs from the perspective of their founder, Cooper: from the Corporate Plaintiffs' formation to developing a filtration mask product, to the mask's failure to receive approval, through an alleged ensuing fight for control of Corporate Plaintiffs. Plaintiffs brought this action against virtually every person or entity that had any involvement along the way -- however minor, and regardless of a defendant's lack of contacts with this jurisdiction -- in a shotgun pleading asserting numerous claims against 19 defendants based on the same conclusory, cut-and-paste allegations.

Plaintiffs do not state a cognizable claim under the Lanham Act against the Smith Defendants because none of the allegations involve a misrepresentation "in connection with

1

commercial advertising or promotion." Without the Lanham Act claims, this Court has no basis for supplemental jurisdiction over the remaining state law claims. There is no basis for this Court's personal jurisdiction over the Smith Defendants because they reside in and are licensed attorneys in California. The alleged conduct did not occur in Delaware. Therefore, this Delaware's long-arm statute personal jurisdiction requirements are not satisfied, nor does jurisdiction comport with the Due Process Clause of the Constitution of the United States.

Even if personal jurisdiction and/or subject matter jurisdiction were present, dismissal is necessary due to insufficient pleading. The conclusory breach of contract claims against Shannon Smith-Crowley and Cole Smith-Crowley fail to meet bare minimum notice pleading standards for alleging a "plausible" claim. Similarly, Plaintiffs fail to allege a plausible tort claim based on conclusory, cut-and-paste allegations of causes of action for unjust enrichment (against each Smith Defendant); fraud and fraudulent concealment (against Shannon Smith-Crowley and Cole Smith-Crowley); tortious interference with contract (against Shannon Smith-Crowley and Cole Smith-Crowley); aiding and abetting misappropriation (against Shannon Smith-Crowley); and legal malpractice (against Shannon Smith-Crowley and Cole Smith-Crowley).[1] Absent a valid tort claim, the claim for civil conspiracy (against all Smith Defendants), must also be dismissed. Nor is there any basis for injunctive relief which is a remedy, not a cause of action.

## STATEMENT OF ALLEGED FACTS

In March 2019, Cooper met Shannon Smith-Crowley at her law office in Sacramento, California, in her capacity as a lobbyist at Wilke Fleury LLP. AC, ¶ 30. On or about June 2019, Shannon Smith-Crowley arranged a meeting for Cooper with California government officials at his

---

[1] Cole Smith-Crowley never performed any legal services for Plaintiffs and the only legal services by Shannon Smith-Crowley alleged by Plaintiffs concluded in 2019 and are now time-barred.

2

request and introduced Cooper to Richard Cabael ("Cabael"), who through Cabael's company Formula Green ("Green") worked in water purification in the Philippines. *Id.*, ¶¶ 33, 35-36. Ms. Smith-Crowley did not have a retainer agreement with Cooper for legal services. *Id.*, ¶ 34. Cabael introduced Cooper to other members of Green, including Defendants investment banker David Traub ("Traub") and Keith Spears ("Spears"), who specialized in raising capital for companies. *Id.*, ¶¶ 37-39. Cabael represented to Cooper that Green would invest $50,000,000 USD in Cooper's water purification company. *Id.*, ¶ 40. In December 2019, Shannon Smith-Crowley introduced Cooper to Defendant Patricia Bellasalma ("Bellasalma"). *Id.*, ¶¶ 49-50. These introductions form the basis of the legal malpractice claim against Shannon Smith-Crowley. *Id.*, ¶ 382.

On January 28, 2020, Cooper incorporated Airlock, as its sole director and shareholder. The company was based on a novel technological approach to the purification of air and water. *Id.*, ¶ 51. On March 25, 2020, Cooper incorporated Stardust for the purpose of research and development and as a management company. *Id.*, ¶ 53. On April 1, 2020, Cooper and Stardust entered into an independent contractor agreement with Bellasalma for her provision of legal services as "Chief Legal Officer." *Id.*, ¶ 55. Bellasalma allegedly induced Cooper to enter into independent contractor agreements with Cabael, as Chief Financial Officer of Airlock, *Id.*, ¶¶ 58-59, and with Traub for investment services. *Id.*, ¶ 62. In addition, over the three-year period between 2020 and 2023, Bellasalma allegedly entered into independent contractor agreements with approximately 14 independent contractors without Cooper's knowledge or authorization. *Id.*, ¶ 234.

In July 2020, allegedly without Cooper's knowledge, Bellasalma caused to be filed with the State of Delaware an Amended Certificate of Incorporation, bifurcating the stock of the corporation and enacting new bylaws. *Id.*, ¶ 73.  Cooper alleges that Bellasalma falsely represented

in the Amended Certificate of Incorporation that "authorization ha[d] been sought and received by the Board of Directors, and authorized by the Shareholders." *Id.*, ¶¶ 75-76.

By September 2020, Cooper's companies "had a fully assembled product [Airlock289, Inc. filtration mask] ready for sale, though Bellasalma recommended against selling the product under an EUA license," and instead recommended waiting for U.S. Food and Drug Administration ("FDA") approval. *Id.*, ¶ 86.

On March 30, 2021, after allegedly learning that Cabael had established Airlock and Stardust as Philippine companies with bank accounts in Cabael's sole control, Airlock terminated Cabael. *Id.*, ¶¶ 89-95. Cooper thereafter allegedly discovered forged documents in the Philippines public record which purported to bear his signature. *Id.*, ¶ 98.[2] In September 2021, Cooper, at Bellasalma's recommendation, terminated Traub for misconduct. *Id.*, ¶¶ 119-124. In October 2021, Traub and Cabael filed a lawsuit against Stardust, Airlock, Bellasalma, and Cooper in California Federal District court alleging employment and labor law violations. *Id.*, ¶ 128. Bellasalma allegedly refused Cooper's request to file a countersuit against Cabael. *Id.*, ¶¶ 129-130.[3]

Bellasalma, at Cooper's request, assisted Plaintiffs in developing a respirator product with Pythos Technologies ("Pythos'), *Id.*, ¶ 71, a corporate partner owned by Ernie Nierras ("Nierras"), a semi-conductor manufacturer and friend of Cooper. *Id.*, ¶ 52. Between June 2022 and April 2023,

---

[2] Cooper speculates, without offering factual support, "[i]n retrospect," he believes that "Bellasalma was working with Cabael to take control of the companies he founded by establishing independent control without Cooper's knowledge or authorization," *Id.*, ¶ 97, and that "it was possibly even Bellasalma who was forging his signature on the documents to establish the corporations and bank accounts in the Philippines" *Id.*, ¶ 101.

[3] Cooper further speculates, "[i]n retrospect," that Bellasalma, despite being personally sued by Cabael, "was possibly in collusion with Cabael through S. Smith-Crowley at the time and they had sought to use the notice of the lawsuit as leverage against him to voluntarily assign the company ownership to them." *Id.*, ¶ 130.

Bellasalma allegedly "created an unauthorized division of Pythos in her exclusive control," pursuant to a contract Plaintiffs claim Nierras entered "under duress." *Id.*, ¶¶ 150-51.

In February 2023, an investment deal between Plaintiffs and Al Mana, a company in Qatar, fell through. *Id.*, ¶¶ 158-162. In March 2023, Bellasalma allegedly demanded a restructuring of the Company and renegotiation of her independent contractor agreement, whereby "she, Nierras, and Cooper would each have one-third ownership of super voting shares in the company going forward." *Id.*, ¶ 163. Thereupon, a heated dispute ensued between Bellasalma and Cooper over control of Airlock during a series of meetings in the Philippines.

Plaintiffs allege that Cole Smith-Crowley attended only one of these meetings on April 11, 2023. *Id.*, ¶ 175. In addition, before leaving for the Philippines, Cooper called Cole in California when he could not reach Shannon, during which call Cole allegedly told Cooper: "Bellasalma had just hired him to be the investor relations person" and that "that he had just finished law school and had an MBA, and that Bellasalma is also an attorney, and that he should rely on their advice because they knew what was best for me." *Id.*, ¶¶ 172-73.

At a meeting in the Philippines on April 12, 2023, Bellasalma handed Cooper a shareholder agreement executed by herself and Nierras, and a "Simple Agreement for Future Equity (SAFE)," which would have vested her with equity, both which Cooper refused to sign. *Id.*, ¶¶ 183-85. After the meeting, Cooper allegedly learned that "Bellasalma and her representatives spent in excess of $2,360,000 USD on supposedly legitimate expenses without a single measurable output. They had received no FDA approvals, secured no sales, nor obtained any investments." *Id.*, ¶ 189.

On April 21, 2023, Nierras allegedly "received a call from the Philippine FDA," in which he "was informed that the Philippine FDA applications filed in March 2023, by Bellasalma and her team were all rejected," for which Cooper blames Bellasalma and "team." *Id.*, ¶ 203, 206.

Cooper allegedly learned that it would take "another 6 months to complete the FDA rework and re-submission." *Id.*, ¶ 207.

At a meeting in the Philippines on April 21, 2023, Bellasalma allegedly told Cooper, "I resign from the Company," to which Cooper responded, "that he accepted her resignation." *Id.*, ¶ 211. However, two days later, Bellasalma wrote to Cooper that "she was not actually resigning" and "then threatened to sue Cooper unless he agreed to her restructuring agreements." *Id.*, ¶ 221. Plaintiffs allege that, "[d]espite receiving notice of their terminations, the Bellasalma parties are improperly in continued control and possession of the company email servers, company property, and related company materials." *Id.*, ¶ 223.

On May 5, 2023, on Stardust letterhead, a "Written Notice of Termination for Cause Independent Contractor Agreement" was issued to Cooper, signed by Bellasalma, as Secretary for Stardust. *Id.*, ¶ 239. An "Action by Written Consent of Stockholders Airlock389, Inc.," dated June 13, 2023 (the "Action By Written Consent"), removed Cooper from any and all officer/director positions for cause, and set forth a slate of newly elected officers and directors of Airlock, including Shannon Smith-Crowley (as Treasurer) and Cole Smith-Crowley (as Secretary). *Id.*, ¶ 241. On June 23, 2023, a cease-and-desist letter was sent to Cooper, among others, in which Bellasalma allegedly represented and held herself out "as a representative and agent of the companies, post-termination and threaten[ed] litigation." *Id.*, ¶¶ 230-31.

Thereafter, Shannon Smith-Crowley, as Treasurer, sent text messages to the Company bookkeeper Bobbie Zawkiewicz, after advising him to consult an attorney, to access Airlock's bank accounts and QuickBooks. *Id.*, ¶¶ 257-62. On August 7, 2023, she sent the bookkeeper the Action By Written Consent and a Board Resolution declaring Cooper "removed from any and all officer/director positions." *Id.*, ¶ 261. On October 2023, Shannon Smith-Crowley, as Treasurer,

allegedly received an overpayment check from a vender of Airlock, which "check was sent to Sacramento, CA." *Id.*, ¶ 261.

The only allegation in the entire 185 page Amended Complaint against Blane A. Smith and The Law Office of Blane A. Smith - which Plaintiffs allege without any factual support "is an alter ego of Defendant Blane A. Smith," – is that they were hired and paid "as an independent contractor … $750 per month to use the firm's address" in Sacramento, California. *Id.*, ¶¶ 23, 267, 916.

## <u>ARGUMENT</u>

### I.    THIS COURT LACKS JURISDICTION

### A.    The Court Lacks Subject Matter Jurisdiction Because Plaintiffs Fail to State a Lanham Act Claim

Plaintiffs rely on federal question jurisdiction. AC, ¶ 29, *citing* 28 U.S.C. §1331 and 15 U.S.C. §1125(a)(1). While not specified in the pleadings, it is assumed that the state claims are subject to the Court's supplemental jurisdiction for state claims that would otherwise not be brought in Federal Court. As discussed below, Plaintiffs do not have a cognizable claim under their only federal claim based on the Lanham Act.[4] Once the Lanham Act claims are dismissed, the remaining claims will not be supplemental to anything and must be dismissed.

To state a claim for false advertising under the Lanham Act, Plaintiff must plead facts alleging that Defendants "made false or misleading statements or descriptions of fact in commercial advertising or promotion that 'misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.'" *Monsanto Co. v. Sygenta Seeds, Inc.*, 443 F. Supp.2d 648, 652-53 (D. Del. 2006). A valid Lanham

---

[4] Ninth cause of action against Shannon Smith-Crowley; Eighth against Cole Smith-Crowley; Third against Blane A. Smith and The Law Office of Blane A. Smith (together, the "Blane Smith Defendants").

Act claim requires allegations that: "1) the defendant has made false or misleading statements as to his own product [or another's]; 2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) the advertised goods traveled in interstate commerce; and 5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,* 653 F.3d 241, 248 (3d Cir. 2011).

Plaintiffs fail to allege any facts to support the required elements of a Lanham Act claim, but in conclusory fashion assert against nearly all 19 defendants each:

> engaged [sic] willful and bad faith conduct in making false and misleading statements of fact, including but not limited to; their illegitimate status as an officer or director of the Plaintiff entities, in connection with Corporate Plaintiffs' goods and services, used in commerce, using the Plaintiff entities' names, terms, symbols, and elsewise, their representations as to the false designation of origin, false and misleading descriptions of fact, and false misleading representations of fact as to the ownership of the Corporate Plaintiff entities, and their authorization to conduct sales and transactions of goods and services on behalf of the Corporate Plaintiffs. AC, ¶¶ 358, 412, 443, 475, 531, 555, 629, 666, 714, 739, 764,813, 856, 892, 910, 929, 959, 987.

Not a single alleged misrepresentation "in connection with commercial advertising or promotion" is made against the Smith Defendants. Nor are any facts alleged showing any intent "to deceive … as to the origin, sponsorship, or approval of their goods, services, or commercial activities." *Id*., ¶¶ 413, 814, 911, 930. No allegations indicate the Smith Defendants would have cause to suspect their affiliation with the Plaintiffs was inconsistent with the filed corporate documents.

Absent the sole basis for this Court's subject matter jurisdiction, this Court cannot exercise supplemental jurisdiction over the remaining state law claims against the Smith Defendants. *Foote v. Mehrotra*, 2023 WL 7214728, at *9 (D. Del.) ("For a court to exercise supplemental jurisdiction, … [t]he federal claims must have substance sufficient to confer subject matter jurisdiction").

### B.    The Court Lacks Personal Jurisdiction Over the Moving Defendants

8

Assuming *arguendo* that the Lanham Act claims do state a claim upon which relief can be granted, this Court still lacks personal jurisdiction over the Moving Defendants because none of the Moving Defendants have availed themselves of this forum. Under Fed. R. Civ. P. Rule 12(b)(2), "plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Katz v. Apuzzo*, 2019 WL 3219513, at *2 (D. Del. 2019) (citations omitted). Determining whether the court has personal jurisdiction over a party requires a two-part analysis: first, the court must determine whether a defendant's actions fall within the scope of the State's long-arm statute; second, the court must determine whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Acco Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545, at *1, *rearg. denied*, 2024 WL 3043311 (D. Del.).

Delaware's long-arm statute confers personal jurisdiction over a defendant which:

"(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State; [or]

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;…"

10 Del. C. § 3104 (C)(1)-(4); *Katz,* 2019 WL 3219513, at *2.

Constitutional due process is satisfied only if "sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice," such that, based on defendant's conduct and connection with the forum state, she "should reasonably anticipate being hauled into court there." *Acco Brands*, 2024 WL 181545, at *1.

Plaintiffs fail to allege any contacts the Moving Defendants have with Delaware. All Shannon Smith-Crowley's alleged activities referenced by Plaintiffs were conducted in California, where she was a lobbyist and attorney, including introducing Cooper to California government officials and Bellasalma in Sacramento, California. AC, ¶¶ 6-7, 33, 49-50. Nor does Cole Smith-Crowley's answering the phone in California, *Id.*, ¶¶ 172-73; his attendance at a meeting in the Philippines, *Id.*, ¶ 175; or his allegedly signing, as corporate Secretary, the Action by Written Consent, *Id.*, ¶ 241; confer jurisdiction over him. *ANI Pharm., Inc. v. Method Pharm.*, 2019 WL 176339, at *6 (D. Del.) (holding officer's signature on distribution contract insufficient for personal jurisdiction); *Tolliver v. Qlarant Quality Solutions, Inc*., 2022 WL 17097602 (Del. Super.), *aff'd*, 297 A.3d 1084 (Del. 2023) (holding officer's signature as Human Resources Vice President on termination letter insufficient "without some indication that [she] committed any act or omission within" Delaware).

Moreover, the claims against Shannon and Cole are not made against them in their capacity as officers or directors, but are asserted against them in only their capacity "terminated advisers" or terminated independent contractors. AC, ¶¶ 220, 263, 376, 782. None of the alleged conduct occurred in Delaware such that they "should reasonably anticipate being hauled into court" there.

Finally, the *only* allegations against Blane Smith and The Law Office of Blane A. Smith -- that they were hired and paid "as an independent contractor … $750 per month to use the firm's address" – occurred in Sacramento, California and has nothing to do with Delaware. *Id.*, ¶¶ 23, 267.

Accordingly, the claims must be dismissed for lacking subject matter and personal jurisdiction.

## II.   PLAINTIFFS DO NOT STATE PLAUSIBLE CLAIMS AGAINST THE MOVING DEFENDANTS

The claims against the Moving Defendants are implausible as pleaded. Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. To state a claim upon which relief can be granted, the complaint must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the *Twombly* standard, although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

### A.  The Breach of Contract Claims Fail to Provide Fundamental Notice and Cannot Be Reconciled With the Allegations that the Contracts Were Improperly Formed[5]

Under Delaware law, to state a claim for breach of contract, a plaintiff must show: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff [ ]." *Reklam v. Bellator Sport Worldwide, LLC*, 2017 WL 5172397, at *3 (D. Del. 2017). "Each element must be supported by specific factual allegations; conclusory statements are insufficient." *Travelers Cas. & Sur. Co. of America v. Blackbaud, Inc.*, 2024 WL 1298762, at *10 (Del Super. 2024); *Buck v. Viking Mangt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. 2021). "Although the court must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiff, it must reject all conclusory allegations." *Reklam,* 2017 WL 5172397, at *4.

Here, Plaintiffs makes the same conclusory cut-and-paste allegations against Shannon Smith-Crowley and Cole Smith-Crowley that they make against multiple other defendants, that "duly authorized independent contractor agreement existed between [insert name of Defendant] and the corporate Plaintiffs," and that the agreement was breached "by diverting revenues due to

---

[5] First Cause of Action against Shannon Smith-Crowley and Cole Smith-Crowley. AC ¶¶ 363-369, 769-775.

Corporate Plaintiffs, kickback schemes to deprive Plaintiffs of funds, and has engaged in other self-dealing and transactions to benefit themselves at the expense of Corporate Plaintiffs." AC, ¶¶ 364, 366; 420, 452, 508, 563, 600, 637, 674, 722, 747, 770, 772.

Such general allegations of otherwise unidentified contracts fail to sustain a cause of action for breach of contract. *Travelers,* 2024 WL 1298762, at *10. Rather, at the pleading stage, plaintiff must cite "the specific contractual terms that were breached." *Id*. at *9. The "[f]ailure to do so 'is not a technical foot fault; it reflects, instead, a fundamental failure to give the [defendant] fair notice of the claim," as required by Fed. R. Civ. P. Rule 8(a). *Id.* at *10. Instead, Plaintiffs make the same vague and conclusory allegations of general classifications of actions against multiple defendants, while failing to allege the defendants' actions themselves, which is insufficient to meet the pleading standards.

There are no factual allegations that an independent contractor agreement was entered into by Shannon Smith-Crowley and the Corporate Plaintiffs, only a basic allegation that there was an agreement. The only factual allegations against her regard her services as a lobbyist prior to the formation of the Corporate Plaintiffs and her actions *after* she was terminated, which therefore fall outside any contract she had with the Corporate Plaintiffs. AC, ¶ 33-36, 49-50, 263. Further, Plaintiffs allege that Cole Smith-Crowley was "paid as an independent contractor without a legitimate purpose," yet they do not allege *any* actions by Cole in his role as an independent contractor, let alone how Cole's actions breached any contract with the Plaintiffs. *Id*, ¶ 265.

Accordingly, the AC fails to meet even the bare minimum notice pleading standards for alleging a "plausible" breach of contract claim against Shannon Smith-Crowley and Cole Smith-Crowley because it fails to provide adequate notice of the defendants of the claims against them.

Further, Plaintiffs allege both that "valid, duly authorized independent contractor agreement" contracts existed with the Smith Defendants but contradictorily that the independent contractor agreements were not knowingly authorized or signed by Cooper.  AC ¶ 234-236, 265, 267-68. Plaintiffs make a 'have your cake and eat it too' argument by asserting breach of contracts they dispute were properly formed. Plaintiffs cannot sustain a breach of contract claim while alleging they were an unknowing party to the breached contract. They cannot sustain a claim for damages because without knowingly entering into the contract and negotiating for the benefit of the bargain there is no benefit of the bargain to the plaintiffs. Without a properly formed contract the Smith Defendants have no contractual obligation to Plaintiffs. The allegations of breach of contracts that Plaintiffs did not know existed are an exercise in circular reasoning that fail to state a claim.

### B.    Unjust Enrichment is not Sufficiently or Alternatively Plead [6]

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Pedrick v. Roten*, 70 F. Supp.3d 638, 652 (D. Del. 2014) (citations omitted). A valid unjust enrichment claim requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Id.*  Unjust enrichment rests on a quasi-contract "theory of recovery to remedy the absence of a formal contract. Thus, a party generally cannot seek recovery under an unjust enrichment theory if a contract 'is the measure of [the] plaintiff's right.'" *Id.,* at 652-53 (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)).

Plaintiffs' unjust enrichment claim repeats the same conclusory mantra that each Defendant "has retained more than their share of the net profits of corporate plaintiffs and have wrongfully

---

[6] Second Cause of Action against Shannon Smith-Crowley and Cole Smith-Crowley; First Cause of Action against the Blane Smith Defendants. AC ¶¶ 370-74, 776-80, 897-901, 915-920.

diverted assets and funds rightfully belonging to corporate plaintiffs in derogation of their duties owed to Plaintiff." AC, ¶¶ 371, 777, 898, 917. Again, these conclusory allegations fail to provide Defendants with fair notice of the unjust enrichment claims against them.

Moreover, by "repeat[ing], realleg[ing] and reiterat[ing]," the preceding allegations that Shannon Smith-Crowley and Cole Smith-Crowley entered an "allegedly valid, duly authorized independent contractor agreement" with the Corporate Plaintiffs the cause of action for unjust enrichment against them rests on the alleged existence of a valid contract. Having thereby incorporated the alleged existence of a valid contract into the unjust enrichment claim, Plaintiffs may not pursue the quasi-contract remedy of a claim for unjust enrichment. *REI Holdings, LLC v. LienClear*, 2019 WL 3546881, at *10 (D. Del. 2019) (Noreika, J.) (holding that by realleging the preceding paragraphs, including the counts for breach of contract, the complaint failed to "set out the unjust enrichment claim as an alternative pleading"). Plaintiffs also fail to plead lack of an adequate remedy at law.

### C.    Plaintiffs Do Not Meet the Heightened Pleading Standard for Fraud or Fraudulent Inducement [7]

Under Delaware law, the elements of fraudulent inducement and fraud are the same: "(1) a false representation or omission of fact that defendant had a duty to disclose; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *REI Holdgs*, 2019 WL 3546881, at *8.

---

[7] Fourth Cause of Action against Shannon Smith-Crowley and Cole Smith-Crowley. AC ¶¶ 380-85, 786-791.

Fraud claims are subject to the heightened pleading requirements of Rule 9(b), which requires that the circumstances constituting fraud be stated with particularity. *Id*. "In other words, the complaint must provide 'all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue.'" *Id*. (citations omitted). Plaintiff must specify the fraudulent statements, who spoke them and to whom, when and where made, and why the statements were fraudulent. *Id*.

Plaintiffs make zero attempt to meet the heightened pleading requirements. Against Shannon Smith-Crowley, the AC merely repeats the same laundry list of alleged breaches of her professional duties in their fraud claim as alleged in the AC's legal malpractice claim against her, which does not even involve alleged misstatements or omissions.[8] Nor do Shannon Smith-Crowley's statements to the company bookkeeper regarding his ability to "enroll in the online Wells Fargo system," her request that he go to the bank with her to access the account, or her asking him if he had "consulted an attorney," qualify as fraudulent statements. AC., ¶¶ 257-59. In any event, Plaintiffs cannot show justifiable reliance, because there is no allegation that the bookkeeper heeded her requests.

Similarly, the alleged statements by Cole Smith-Crowley about being hired by Bellasalma; his purported advice that "Cooper should rely on the advice provided by him and Bellasalma;" or his signing, as corporate Secretary, the Action by Written Consent; do not qualify as false statements or omissions of facts. AC, ¶¶ 172-73, 241.

---

[8] *See*, *e.g*., AC, ¶ 382(a) (alleging absence of a retainer agreement); *Id*., ¶¶ 382 (b)-(d) (Shannon's recommendation and/or introduction of Cooper to Cabael and Bellasalma); 382(e) (her unidentified assistance "with the creation and filing of" the Amended Certificate of Incorporation), and 382(f). (her *not* taking on the representation of Plaintiffs in the lawsuit filed by Cabael).

Further, Plaintiffs do not allege, as they must, "sufficient facts from which [scienter] can be reasonably inferred." *Market America, Inc. v. Google, Inc*., 2010 WL 3156044, at *4 (D. Del. 2010). No facts are alleged from which it can be reasonably inferred that Shannon Smith-Crowley had any reason to believe her statements to the bookkeeper were false. Nor could one infer that Cole, as a newly hired law school graduate, had knowledge of the falsity of any of his alleged statements when he answered the phone call from Cooper. AC*, ¶* 172. Plaintiffs cannot show justifiable reliance because Cooper "refused all demands and did not execute any of the documents [Defendants] presented." *Id.*, ¶ 202. The fraud and fraudulent inducement claims against Shannon Smith-Crowley and Cole Smith-Crowley must be dismissed.

**D.      No Contracts Were Allegedly Breached Due to Alleged Tortious Interference[9]**

Under Delaware law, the elements of a claim for tortious interference with a contract are: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc*., 67 A.3d 444, 453 (Del. 2013). "An officer or director may be held personally liable for tortious interference with a contract of the corporation if, and only if, said officer or director exceeds the scope of his agency in so doing." *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F. Supp. 392, 400 (D. Del. 1993); *vMedex, Inc. v. TDS Operating, Inc*., 2020 WL 4925512, at *9 (D. Del. 2020).

Plaintiffs fail to allege any specific contracts with Pythos or unspecified "others" that were breached due to conduct by Shannon or Cole. Am. Compl. ¶ 387. The numerous allegations involving Pythos[10] do not even mention Shannon or Cole, let alone their engagement in any

---

[9] Fifth Cause of Action against Shannon Smith-Crowley and Cole Smith-Crowley. Am. Compl. ¶¶ 386-92, 792-98.
[10] *See, e.g*., Amend. Compl., ¶¶ 71, 111, 146-52, 163-64, 195.

intentional acts outside the scope of their role as agents of the Corporate Plaintiffs or otherwise. Accordingly, the claims for tortious interference with contract must be dismissed.

### E.    Aiding and Abetting Misappropriation Fails to Plead Actual Knowledge and Wrongful Act

"To prove a claim of aiding and abetting, a plaintiff must demonstrate that (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance for the wrongful act." *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat'l Ass'n*, 2011 WL 864421, at *4 (D. Del.). The scienter required for an aiding and abetting claim is "actual knowledge." *Id*.; *Brug v. Enstar Group, Inc*., 755 F. Supp. 1247, 1256 (D. Del.).

The seventh cause of action against Shannon Smith-Crowley for aiding and abetting misappropriation alleges in conclusory fashion that she "abetted in the improper and unauthorized appropriation of said property without authorization or consent of the Plaintiff, and improperly used said properties and funds for personal gain or advantage and had knowledge or reason to know that said properties and funds were acquired by improper means without express or implied consent." AC, ¶ 40.1 Where, as here, the claim for aiding and abetting is alleged in conclusory fashion, without "even specifically stat[ing] which defendants are alleged to be the primary violators and which the aiders and abettors" or "indicat[ing] by what means the latter group provided substantial assistance to the former," it fails to "meet the pleading requirements for the wrongful act element of aiding and abetting liability." *Brug*, 755 F. Supp. at 1256. Nor do Plaintiffs allege with any specificity what property was allegedly misappropriated or how Shannon had the required actual knowledge of the misappropriation. Accordingly, the claim for aiding and abetting misappropriation against her must be dismissed.

**F.     Plaintiffs Fail to State a Claim for Legal Malpractice Against Cole Smith-Crowley and Shannon Smith-Crowley (Which Claim Against Her Is Time-Barred) [11]**

Plaintiffs admit that Cole Smith-Crowley, according to the Amended Complaint, never performed any legal services for the Plaintiffs. Nor is there any allegation that an engagement agreement for legal services was made between the plaintiffs and Cole. During one phone conference with Cooper, Cole held himself out as a newly hired "investor relations person," not as counsel. AC, ¶¶ 172-73. Nor did Cole allegedly sign the Action by Written Consent, as counsel, but rather as "as an alleged secretary and director." *Id*., ¶ 241.

California law applies to any legal malpractice claim against Shannon Smith-Crowley because the alleged agreement to represent Plaintiffs occurred exclusively in California in April 2019, when she allegedly told Cooper in California that, "she was interested in becoming involved with helping [him] establish Cooper's companies by using her legal skills to vet and filter interested parties to facilitate introductions with people possessing different skill sets who could help build the business including investors and decision makers within the California State Government." *Id*., ¶¶ 32, 382(a)-(d). None of her other alleged conduct involved legal representation and none occurred in Delaware.[12]

Under California law, a claim for legal malpractice requires proof that: "(1) the attorney owed a duty to the client to use such skill, prudence and diligence as members of the profession commonly possess; (2) the attorney breached that duty; (3) the breach proximately caused the client's injury; and (4) the client was damaged." *Engel v. Pech*, 95 Cal. App.5th 1227, 1241 (Cal. App. 2d 2023). Shannon's introduction of Cooper to someone in the same field or recommending another California attorney who was in good standing is hardly legal malpractice. *Canterbury Women's Health Care,*

---

[11] Sixth Causes of Action, Am. Compl. ¶¶ 393-398, 799-804.
[12] AC, ¶¶ 131-32 (her *not* representing Plaintiffs in the lawsuit brought by Cabael in California, by definition, is not a legal representation); *Id*., ¶ 241(her efforts to obtain financial records and access to the Company's bank account from the Company's bookkeeper were allegedly in her capacity as Treasurer, not as counsel).

*Inc. v. Rucker*, 2006 WL 3477779 (Cal. Super.). aff'd, 2007 WL 2834603 (Cal. App. 1st) (holding "there is no duty under California law to investigate beyond assuring that the attorney to whom the matter is referred is licensed to practice law").

Moreover, the claim against Shannon is time-barred because it must be brought within one year of actual or constructive discovery, or four years after the date of the wrongful act or omission, whichever occurs first. *Foxborough v. Van Atta,* 26 Cal. App.4th 217, 224 (Cal. App. 1994); West's Ann. Cal. C.C.P. § 340.6 (2020). Shannon's alleged legal service in introducing and recommending Cabael and Bellasalma to Plaintiffs occurred in 2019, more than four years before this action was brought on July 18, 2024. Accordingly, the claim for legal malpractice is time-barred.[13]

### G.    Civil Conspiracy Is Unsustainable Without an Underlying Tort and None Exists[14]

The elements of civil conspiracy are: "(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damages." *Rader v. ShareBuilder Corp*., 772 F. Supp.2d 599, 605 (D. Del. 2011) (citations omitted). "Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong. Thus, if plaintiff fails to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 892 (Del Ch. 2009); *See also Tusha v. Pediatric Assocs*., 2022 WL 823583, at *7 (D. Del.); *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. 2001). For these reasons, Plaintiffs do not allege a valid tort claim against Defendants. The claim for civil conspiracy must be dismissed.

---

[13] The result is the same under Delaware's three-year statute which begins to run from the time of the alleged wrongful act. *Mukasa v. Balick & Balick*, 2002 WL 1971921, at *2 (D. Del.); 10 Del. C. § 8106.

[14] Eighth Cause against Shannon Smith-Crowley; Seventh against Cole Smith-Crowley; Second against the Blane Smith Defendants. AC ¶¶404-10, 805-11, 902-08, 921-27.

**H.      Injunctive Relief is Not a Viable Claim Against Shannon Smith-Crowley or Cole Smith-Crowley [15]**

Injunctive relief "is a remedy, not a cause of action." *Patrick v. Eastern Spec. Fin., Inc.*, 2015 WL834107, at *2 (D. Del.). Absent a viable cause of action against the Defendants, the Court need not consider Plaintiffs' request for an injunction. *Id.*

<u>**CONCLUSION**</u>

Moving Defendants respectfully request this Court grant their Motion to Dismiss the claims against them entirely with prejudice.

**KAUFMAN DOLOWICH LLP**

*/s/ Kristen S. Swift*
Kristen S. Swift (No.6077)
222 Delaware Avenue, Suite 720
Wilmington, DE 19801
(302) 482-8662

Of Counsel:
Peter A. Stroili
Kaufman Dolowich LLP
40 Exchange Place
New York, New York 10005
(212) 485-9600
Dated: December 30, 2024

---

[15] Third Cause of Action, Am. Compl. ¶¶ 375-79, 781-85.