## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CHRIS COOPER, STARDUST389, INC.,** | | |
| **and AIRLOCK389, INC.,** | : | **Civil Action No. 1:24-cv-00832-MN** |
| | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PATRICIA BELLASALMA, SHANNON** | : | |
| **SMITH-CROWLEY, RICHARD** | : | |
| **CABAEL, DAVID TRAUB, KEATH** | : | |
| **SPEARS, DENIS G. LUCINDO, PAUL** | : | |
| **PARMON, MICHAEL ARIZOLA,** | : | |
| **DIVYESH MAKWANA, CATERINA** | : | |
| **NETTI, CARIE ELENA EDWARDS,** | : | |
| **LAURA DUNPHY, COLE SMITH-** | : | |
| **CROWLEY, SANDRA WILLIAMS,** | : | |
| **TORI TRASK, BLANE A. SMITH, THE** | : | |
| **LAW OFFICE OF BLANE A. SMITH,** | : | |
| **MAGALY ZAGAL, CALIFORNIA** | : | |
| **CAPITOLIO STRATEGIES LLC,** | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SMITH DEFENDANTS' MOTION TO DISMISS

*/s/ Antranig Garibian*

By:  Antranig Garibian, Esq. (DE Bar 4962)
Garibian Law Offices, P.C.
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 722-6885
ag@garibianlaw.com
*Attorneys for Plaintiffs Chris Cooper, Stardust389, Inc., and Airlock389, Inc.*

i

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

NATURE AND STAGE OF PROCEEDINGS ......................................................... 1

SUMMARY OF ARGUMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ............................................................................................................ 5

   I.    THIS COURT IS VESTED WITH SUBJECT MATTER JURISDICTION OVER THE CONTROVERSY ................................................................................................ 5

      A. The Lanham Act Claims Are Properly Pled ..................................................... 5

      B. Supplemental Jurisdiction Is Appropriate ........................................................ 7

   II.   PERSONAL JURISDICTION EXISTS OVER THE SMITH-DEFENDANTS ............... 9

      A. Delaware Long-Arm Statute is Satisfied ......................................................... 9

      B. Due Process Requirements Are Met. .............................................................. 10

   III.   THE COMPLAINT STATES VALID AND COGNIZABLE CLAIMS ........................ 12

      A. Plaintiffs' Contract Claims Are Properly Pled ............................................... 12

      B. Plaintiffs' Fraud Claims Meet Rule 9(b) Requirements ................................. 14

      C. Legal Malpractice Claims Are Timely and Viable ......................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Acco Brands USA LLC v. Performance Designed Prods. LLC, 2024 WL 181545 (D. Del.) ... 8, 9, 11

ANI Pharm., Inc. v. Method Pharm., 2019 WL 176339 (D. Del.) ................................8, 10, 11, 19

Buck v. Viking Mangt. Co. LLC, 2021 WL 673459 (Del. Super.) ................................................ 14

Canterbury Women's Health Care, Inc. v. Rucker, 2006 WL 3477779 (Cal. App. 1st) ............... 18

Engel v. Pech, 95 Cal. App.5th 1227, 1241 (Cal. App. 2d 2023) ................................................ 17

Estate of Ware v Hosp. of the Univ. of Pennsylvania, 871 F3d 273 (3d Cir 2017) ...................... 4

Foote v. Mehrotra, 2023 WL 7214728 (D. Del.) ...................................................................... 7, 8

Foxborough v. Van Atta, 26 Cal. App.4th 217, 224 (Cal. App. 1994) ......................................... 17

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011).................................... 4

Hardwire, LLC v. Zero Int'l, Inc., 2014 U.S. Dist. LEXIS 146364 (D. Del. Oct. 14, 2014) ......... 4

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) ................................... 4

International Shoe Co. v. Washington, 326 U.S. 310 (1945)...............................................5, 10, 11

Kach v. Hose, 589 F.3d 626 (3d Cir. 2009)................................................................................... 4

Katz v. Apuzzo, 2019 WL 3219513 (D. Del.).............................................................................. 8

Monsanto Co. v. Sygenta Seeds, Inc., 443 F. Supp.2d 648 (D. Del. 2006) .............................. 6, 7

Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241 (3d Cir. 2011) ......................... 5

Phillips v. Cnty. Of Allegheny, 515 F.3d 224 (3d Cir. 2008) .................................................. 5, 20

Power Integrations, Inc. v. BCD Semiconductor Corp., 547 F. Supp. 2d 365 (D. Del. 2008) ....... 5

Rader v. ShareBuilder Corp., 772 F. Supp.2d 599 (D. Del. 2011)........................................ 18, 20

REI Holdings, LLC v. LienClear, 2019 WL 3546881 (D. Del.).................................................. 14

Reklam v. Bellator Sport Worldwide, LLC, 2017 WL 5172397 (D. Del.) .................................. 13

Tolliver v. Qlarant Quality Solutions, Inc., 2022 WL 17097602 (Del. Super.) .......................... 10

Travelers Cas. & Sur. Co. of America v. Blackbaud, Inc., 2024 WL 1298762 (Del Super.) ........ 12

Wood v. Coastal States Gas Corp., 401 A.2d 932 (Del. 1979) ..................................................... 16

**Statutes**

10 Del. C. § 3104 ......................................................................................................................... 9

18 U.S.C. § 1343 .......................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 8(a) ..................................................................................................................... 14

Fed. R. Civ. P. 9(b) ..................................................................................................................... 14

Fed. R. Riv. P. 12(b) ..................................................................................................................... 5

Fed. R. Civ. P. 15(a) ................................................................................................................... 20

## INTRODUCTION

This action arises from a coordinated scheme by multiple defendants, including Shannon Smith-Crowley, ("Shannon"), Cole Smith-Crowley, ("Cole"), Blane A. Smith, and the Law Office of Blane A. Smith (collectively, "Smith Defendants"), to unlawfully seize control of Delaware corporations Stardust389, Inc. and Airlock389, Inc. Beginning in 2023 and continuing to date, Defendants have attempted to misappropriate control from the companies' legitimate founder and leader, Christopher H. Cooper ("Cooper"). The Smith Defendants played key roles in this scheme: Shannon Smith-Crowley, after termination, asserted authority as a Director and Treasurer to redirect company payments and access corporate accounts and improperly threatened litigation against company employees ; Cole Smith-Crowley, a recent law graduate, claimed unauthorized control over investor relations; and both purported to assume officer positions and issue illegitimate corporate governance documentation through an unauthorized Action by Written Consent removing Cooper. The Law Office of Blane A. Smith and Blane A. Smith supported these actions by providing their office address and received unauthorized payments from the Companies while lacking legitimate authority.

## NATURE AND STAGE OF PROCEEDINGS

On December 30, 2024, the Smith-Defendants filed the instant Motion to Dismiss ("Motion"). Plaintiffs oppose the Motion and ask that the Court deny the Smith Defendants' Motion in its entirety.

## SUMMARY OF ARGUMENT

The Court has 1) subject matter jurisdiction over the Lanham Act claims based on Defendants' commercial misuse of corporate marks and authority, and 2) personal jurisdiction over the moving defendants through their voluntary assumption of Delaware corporate officer

positions and subsequent exercise of control over Delaware corporate assets. The Court has supplemental jurisdiction over the state law claims since share a common nucleus of operative facts with the federal claims. The Complaint pleads viable claims for breach of contract, fraud, and legal malpractice by detailing Shannon's attempts to redirect corporate payments, Cole's misrepresentations about corporate authority, and their coordinated participation in an unauthorized Action by Written Consent attempting to seize corporate control. The civil conspiracy claims are supported by specific allegations of overt acts and coordinated conduct causing direct financial harm to the Corporate Plaintiffs through disruption of corporate governance and misappropriation of assets.

## STATEMENT OF FACTS

The unauthorized corporate takeover attempt unfolded in 2023, subsequent to the contractual terminations of the Smith Defendants when they participated in a series of coordinated actions to unlawfully seize control of the Delaware corporations. See *Amended Complaint* (ECF Doc. 4) ("Am. Comp.") *generally*. On June 13, 2023, Shannon and Cole executed an unauthorized "Action by Written Consent of Stockholders Airlock389, Inc." which purported to remove Cooper from all officer and director positions while simultaneously installing them as Director and Treasurer and as Director and Secretary, respectively. *Id*. at ¶ 241. Following this unauthorized action, Shannon began asserting control over corporate assets by repeatedly contacting the company bookkeeper to demand access to QuickBooks files and financial records upon threat of litigation in an abuse of her license to practice law. *Am. Comp*. at ¶¶ 258-262. She even succeeded in redirecting company payments, including intercepting an overpayment check from a vendor which was sent to Sacramento, California. *Id*. at ¶ 263.

Cole actively participated in the scheme by asserting that Cooper should rely on his advice because he "knew what was best for [him]." *Id*. at ¶¶ 172-173. Cole's unauthorized exercise of corporate authority continued through his participation in meetings regarding corporate control, including his attendance at an April 11, 2023, meeting at the Palms Country Club in Filinvest City in Alabang, Philippines, where he participated in discussions about restructuring the company. *Id*. at ¶ 175. During this meeting Shannon and Cole continued to press Cooper for hours to relinquish control of the company pursuant to Defendant Patrcia Bellasalma's restructuring demand" and "demanded" that Cooper relinquish Cooper's investor contacts and communications to Cole and approve and accept his Independent Contractor agreement as Chief Investment Officer. *Id*. at ¶¶ 200-202. Cooper refused all demands and did not execute any of the documents presented at this meeting. *Id*. at ¶¶ 200-202. Thereafter, Cole continued his participation in the unauthorized corporate actions by executing documents as Secretary in the June 13, 2023 "Action by Written Consent of Stockholders Airlock389, Inc." which illegitimately purported to remove Cooper from all officer/director positions. *Id*. at ¶ 241. The Law Office of Blane A. Smith and Blane A. Smith facilitated these unauthorized actions by providing their Sacramento office address for illicit corporate activities while receiving monthly payments of $750 for the use of their address. *Id*. at ¶ 267. The law office acted as an alter ego of Blane A. Smith, the husband of Shannon Smith-Crowley, to further the overall scheme to seize control of the Delaware corporations. *Id*. at ¶ 916. These coordinated actions by the Smith Defendants were part of a larger conspiracy involving multiple defendants who worked together to misappropriate control of the Delaware corporations from their legitimate owner and founder, causing substantial damage to both the corporate entities and Cooper personally.

**LEGAL STANDARD**

Moving defendants argue that once the Lanham Act claim is dismissed, the Court may not exercise jurisdiction over the remaining state law claims. Even if the Lanham Act claims are dismissed, which Plaintiffs oppose, Defendants are not correct that the remaining state law claims *must* be dismissed. When a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to § 1367, over pendent state-law claims. *Estate of Ware v Hosp. of the Univ. of Pennsylvania*, 871 F3d 273, 286 (3d Cir 2017) (internal quotes omitted). This decision should be based on considerations of judicial economy, convenience and fairness to the litigants. *Id.* (citing *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009)).

Moving defendants also argue that the Court may not exercise personal jurisdiction over them. The Supreme Court of the United States has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[] to the defendant's contacts with the forum.'" *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "General jurisdiction" encompasses complaints arising from dealings that are distinct from the defendant's activities in the state. *Id*. at 924. In order to establish personal jurisdiction, a plaintiff must typically adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 U.S. Dist. LEXIS 146364, 2014 WL 5144610, at *6 (D. Del. Oct. 14, 2014) On the statutory prong, courts consider whether the defendant's actions fall within the scope of a state's long-arm statute.

*Hardwire*, 2014 U.S. Dist. LEXIS 146364, [WL] at *6; *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). Due process is satisfied if the Court finds the existence of "'minimum contacts' between the non-resident defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Power Integrations*, 547 F. Supp. 2d at 369 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 31666 S. Ct. 154, 90 L. Ed. 95 (1945)).

Moving defendants also move for dismissal pursuant to Fed. R. Riv. P. 12(b)(6). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (*internal quotations and citations omitted*).

## ARGUMENT

### I. THIS COURT IS VESTED WITH SUBJECT MATTER JURISDICTION OVER THE CONTROVERSY

#### A. The Lanham Act Claims Are Properly Pled

The Lanham Act claims against the Smith Defendants arise from their systematic misuse of corporate marks and authority in commercial activities affecting interstate commerce. In the Third Circuit, misrepresentations about corporate authority and ownership in commercial transactions can constitute violations of the Lanham Act where they affect interstate commerce and create likelihood of confusion. See *Pernod Ricard USA, LLC v. Bacardi U.S.A.*, Inc., 653 F.3d 241 (3d Cir. 2011).

The Complaint alleges that Shannon engaged in actionable commercial misrepresentation through her unauthorized use of corporate authority as Treasurer. In one example, she contacted

Chemglass Life Sciences, LLC and successfully redirected a $9,600 corporate overpayment to Sacramento, California, representing herself as having legitimate corporate authority to direct these interstate financial transactions subsequent to her termination as an Independent Contractor. *Am. Compl.* ¶ 263. Her purported authority as Treasurer arises from the illegitimate and unauthorized Action by Written Consent which attempted to install her as a Director and Treasurer. *Id*. at ¶ 241. She made material misrepresentations to the company's bookkeeper regarding her authority to access corporate banking and financial records, sending a purported "Board Resolution" that falsely claimed Cooper's removal from corporate leadership and threatening to "take legal action" if the bookkeeper did not comply with her repeated illegitimate requests. *Id*. at ¶ 262. Similarly, Cole's conduct meets the "commercial use" requirement through his assertions of corporate authority in investor relations. Cole demanded Cooper transfer control of investor relations to him while representing that his authority derived from legitimate corporate appointment despite knowing otherwise. *Id*. at ¶¶ 172-173. Misrepresentations affecting corporate governance and investor relationships satisfy the commercial use requirement where they impact business operations. See *Monsanto Co. v. Sygenta Seeds, Inc.,* 443 F. Supp.2d 648 (D. Del. 2006).

The interstate commerce element is also satisfied because the Smith Defendants' misrepresentations affected business operations across multiple jurisdictions, including Shannon's redirection of the Chemglass Life Sciences, LLC overpayment check from Delaware to Sacramento, California, Cole's participation in corporate restructuring meetings in the Philippines, specifically the April 11, 2023 meeting at the Palms Country Club in Filinvest City in Alabang, and the Law Office of Blane A. Smith's provision of a Sacramento office space for

Delaware corporate operations. *Id*. at ¶¶ 263, 175, 200-202, 267.[1] The resulting interference with banking relationships, vendor payments, and corporate governance directly impacted interstate commercial activities.

The materiality requirement is also met because the misrepresentations were likely to influence business decisions and relationships. See *Foote v. Mehrotra*, 2023 WL 7214728 (D. Del.). The Smith Defendants' false claims of corporate authority led to actual confusion among vendors and stakeholders, as illustrated by Chemglass Life Sciences redirecting payment based on Shannon's representations. *Am Compl.* ¶ 263. Their coordinated actions intentionally created a legitimate risk of confusion about corporate control and authority in the marketplace.

This pattern of unauthorized use of corporate marks and authority in commercial transactions distinguishes these claims from cases involving merely internal corporate disputes. The Amended Complaint's allegations demonstrate the Smith Defendants actively deployed corporate marks and authority to affect commercial relationships with third parties across state lines while abusing their licenses to practice law, bringing their conduct squarely within the scope of the Lanham Act. *Am. Compl.* at ¶¶ 263, 175, 200-202, 267.

### B. Supplemental Jurisdiction Is Appropriate

The exercise of supplemental jurisdiction over the state law claims is appropriate under controlling precedent because they form part of the same case or controversy as the federal Lanham Act claims. In *Monsanto Co. v. Sygenta Seeds, Inc.*, 443 F. Supp.2d 648 (D. Del. 2006),

---

[1] These interstate wire communications in furtherance of her fraudulent scheme, combined with her willful abuse of her law license to intimidate corporate employees through baseless litigation threats, demonstrate a pattern of particularly culpable conduct that likely constitutes wire fraud under federal law. 18 U.S.C. § 1343 prohibits using interstate wire communications to execute a scheme to defraud.

the Court held that supplemental jurisdiction exists where state claims share a "common nucleus of operative fact" with viable federal claims.

Here, the state and federal claims arise from an integrated scheme of unauthorized corporate actions. The Smith Defendants' conduct mirrors that addressed in *Foote v. Mehrotra*, 2023 WL 7214728 (D. Del.), where the court found supplemental jurisdiction proper over state law claims that were "inextricably intertwined" with Lanham Act violations. Shannon's misrepresentations to vendors and attempts to redirect corporate payments implicate both federal commercial misrepresentation claims and state law breach of fiduciary duty claims. This is distinguishable from *Katz v. Apuzzo*, 2019 WL 3219513 (D. Del.), where the court declined supplemental jurisdiction because the state claims required proof of additional facts beyond the federal claims. Here, the unauthorized "Action by Written Consent" serves as the common factual nexus for both the federal claims regarding misuse of corporate authority in commerce and the state law claims for corporate governance violations.

The case more closely resembles *ANI Pharm., Inc. v. Method Pharm.*, 2019 WL 176339 (D. Del.), where supplemental jurisdiction was exercised over state claims arising from coordinated corporate misconduct that also supported Lanham Act violations. Like *ANI Pharm.*, the allegations relating to the Smith Defendants' scheme - including Cole's misrepresentations about corporate authority and the Law Office of Blane A. Smith's support of unauthorized corporate actions - will substantially overlap for both federal and state claims. As in *Acco Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545 (D. Del.), the exercise of supplemental jurisdiction promotes judicial economy where, as here, the claims arise from "a common scheme of misconduct" requiring substantially similar evidence and witness testimony.

The coordinated nature of the Smith Defendants' actions in attempting to seize control of Delaware corporations makes separate adjudication inefficient and risks inconsistent results.

## II.    PERSONAL JURISDICTION EXISTS OVER THE SMITH-DEFENDANTS

### A. Delaware Long-Arm Statute is Satisfied

The Delaware long-arm statute is satisfied because the Smith Defendants voluntarily assumed officer roles in Delaware corporations and subsequently exercised purported corporate authority. Under Delaware's long-arm statute, 10 Del. C. § 3104(c), personal jurisdiction exists where defendants transact business or perform work in Delaware, or cause tortious injury through acts or omissions.

Through the June 13, 2023 "Action by Written Consent," Shannon and Cole improperly assumed officer positions as Directors and Treasurer and Secretary, respectively, of Airlock389, Inc., a Delaware corporation. *Am. Complt.* ¶ 241. This Court has recognized that accepting corporate officer positions in Delaware entities supports personal jurisdiction. See *Acco Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545 (D. Del.).

Following their assumption of these roles, the Smith Defendants exercised substantial control over Delaware corporate assets. For example, Shannon, as purported Treasurer subsequent to her contractual termination, contacted the corporate bookkeeper demanding access to QuickBooks files and bank accounts upon unlawful threats of litigation, sent a fraudulent Board Resolution claiming Cooper's removal, and redirected corporate payments including an overpayment check from Chemglass Life Sciences. *Amended Complaint*, ¶¶ 258-262. These actions constitute both "transacting business" and causing tortious injury under § 3104(c).

Cole similarly exercised purported corporate authority by demanding control over investor relations and signing corporate documents as Secretary without authorization. *Amended*

*Complaint*, ¶¶ 172-175. The Law Office of Blane A. Smith and Blane A. Smith supported these activities by providing their office address for corporate operations and receiving monthly payments of $750, thereby participating in the unauthorized control of Delaware corporate assets. *Id.* at ¶¶ 267.

This case is distinguishable from *Tolliver v. Qlarant Quality Solutions, Inc.*, 2022 WL 17097602 (Del. Super.), where mere signature on corporate documents was insufficient to establish jurisdiction. Here, the Smith Defendants engaged in sustained exercise of purported corporate authority, including attempting to redirect corporate payments and access financial accounts. *Am. Comp.* at ¶¶ 258-262. Their actions caused direct injury to Delaware corporations through interference with corporate governance and misappropriation of assets. The defendants' conduct more closely resembles *ANI Pharm., Inc. v. Method Pharm.*, 2019 WL 176339 (D. Del.), where jurisdiction was found proper based on defendants' assumption of corporate roles and subsequent exercise of authority affecting Delaware corporate interests. The Smith Defendants' coordinated actions to seize control of Delaware corporations and redirect corporate assets demonstrate purposeful engagement with Delaware's corporate framework.

### B. Due Process Requirements Are Met.

The exercise of personal jurisdiction over the Smith Defendants comports with constitutional due process requirements through their purposeful contacts with Delaware and the fundamental fairness of jurisdiction. The Supreme Court's two-part due process test requires both minimum contacts and fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The Smith Defendants established sufficient minimum contacts through their voluntary acceptance and exercise of corporate officer positions in Delaware corporations. *Am. Complt.* ¶ 241. Shannon deliberately assumed the illegitimate role of Treasurer and

exercised substantial authority by attempting to access corporate bank accounts, directing the company bookkeeper regarding financial records, and redirecting corporate payments. *Id.* at ¶¶ 258-262. Cole similarly created purposeful contacts by accepting the illegitimate Secretary position and asserting authority over investor relations while signing corporate documents in his purported official capacity. *Id.* at ¶¶ 171-175.

Their conduct is analogous to that addressed in *Acco Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545 (D. Del.), where the court found purposeful availment through defendants' voluntary assumption of corporate roles and subsequent exercise of authority affecting Delaware corporate interests. The Smith Defendants' actions went beyond mere passive contacts, as they actively attempted to redirect corporate assets and payments, including Shannon's successful redirection of a vendor's overpayment check to Sacramento. *Id.* at ¶¶ 171-175.

The exercise of jurisdiction comports with fair play and substantial justice because the burden on defendants is reasonable given their voluntary assumption of the illegitimate Delaware corporate offices. Delaware has a substantial interest in adjudicating disputes involving its corporate entities, the plaintiffs have a strong interest in obtaining relief in Delaware where the corporations are registered, and the interstate judicial system's interest favors Delaware jurisdiction over corporate governance disputes. See *International Shoe Co.* This case is distinguishable from *ANI Pharm., Inc. v. Method Pharm.*, 2019 WL 176339 (D. Del.), where contacts were found insufficient because they were merely incidental. Here, the Smith Defendants deliberately assumed illegitimate corporate authority and exercised control over Delaware corporate assets through an orchestrated scheme involving the illegitimate attempted

hostile takeover and unauthorized Action by Written Consent, and subsequent attempts to redirect corporate payments and access financial accounts. See *Am. Complt., Generally.*

### III.    THE COMPLAINT STATES VALID AND COGNIZABLE CLAIMS

### A. Plaintiffs' Contract Claims Are Properly Pled

The Complaint adequately pleads viable contract claims against the Smith Defendants that satisfy federal pleading standards.[2] Under Delaware law, as recognized in *Travelers Cas. & Sur. Co. of America v. Blackbaud, Inc.*, 2024 WL 1298762 (Del Super.), a plaintiff must plead the existence of a contract, breach of that contract, and resulting damages.

The Complaint alleges that Shannon Smith-Crowley entered into an independent contractor agreement with the Corporate Plaintiffs. *Am. Compl.* ¶¶ 363-364 ("an allegedly valid, duly authorized independent contractor agreement existed between Shannon and Corporate Plaintiffs.") Similarly for Cole Smith-Crowley, *Am. Compl.* ¶¶ 769-770 alleges "an allegedly valid, duly authorized independent contractor agreement existed between Cole and Corporate Plaintiffs." The existence of these agreements is further supported by allegations that Cole "was being paid as an independent contractor without a legitimate purpose." *Am. Compl.* ¶ 265.

The breach elements are supported by detailed allegations of unauthorized actions in the Amended Complaint. Shannon attempted to redirect corporate payments, as evidenced by her October 2023 actions convincing Chemglass Life Sciences, LLC to send her a $9,600 overpayment check to Sacramento instead of returning it to Airlock389's Wells Fargo account. *Am. Compl.* ¶ 263. She also made repeated unauthorized attempts to access company bank

---

[2] For Shannon Smith-Crowley: First Cause of Action (Breach of Contract), Am. Compl. ¶¶ 363-369, alleging breach of independent contractor agreement through diversion of revenues and kickback schemes. For Cole Smith-Crowley: First Cause of Action (Breach of Contract), Am. Compl. ¶¶ 769-775, alleging breach of independent contractor agreement through diversion of corporate revenues and self-dealing transactions.

accounts and financial records, sending multiple communications to the company bookkeeper demanding access to QuickBooks files and threatening legal action. *Am. Compl.* ¶¶ 257-262. Cole made unauthorized demands for control over investor relations, specifically "directing and instructing" Cooper to "hand over all investor relations to him" while claiming Bellasalma had hired him for this role. *Am. Compl.* ¶¶ 172-173. He further participated in unauthorized corporate governance by attending meetings regarding company restructuring, including the April 11, 2023, meeting at the Palms Country Club where he joined attempts to pressure Cooper to relinquish control. *Am. Compl.* ¶¶ 175, 200-202. Together, the defendants participated in the June 13, 2023 "Action by Written Consent of Stockholders Airlock389, Inc." which attempted to remove Cooper from all officer/director positions while installing Shannon Smith-Crowley as Director and Treasurer and Cole Smith-Crowley as Director and Secretary. *Am. Compl.* ¶ 241. This unauthorized action formed the basis for their subsequent attempts to exercise corporate control without proper authority.

Moving Defendants' argument that these claims are contradictory because they challenge the contracts' formation, fails at the pleading stage, as plaintiffs may plead alternative theories of liability. *Reklam v. Bellator Sport Worldwide, LLC*, 2017 WL 5172397 (D. Del.). The Complaint properly alleges that defendants 1) breached valid contracts and, alternatively, 2) that the contracts were improperly formed through unauthorized actions. *Am. Compl.* ¶ 263.

The damages element is satisfied through specific allegations of financial harm. The Complaint details the diversion of corporate revenues and assets, unauthorized payments and kickback schemes, and interference with corporate banking relationships and vendor payments. The interference with corporate banking relationships and vendor payments is demonstrated through Shannon's repeated attempts to gain unauthorized access to corporate bank accounts

(*Am. Compl.* ¶¶ 257-259), her transmission of a fraudulent Board Resolution to the company

bookkeeper (*Am. Compl.* ¶ 261), and her unlawful threats of legal action to compel access to

corporate financial records (*Am. Compl.* ¶ 262). This case is distinguishable from *Buck v. Viking*

*Mangt. Co. LLC*, 2021 WL 673459 (Del. Super.), where conclusory allegations of breach were

found insufficient. Here, the Complaint details specific unauthorized actions and resulting harm

to the Corporate Plaintiffs, satisfying the "short and plain statement" requirement of Rule 8(a)

while providing fair notice of the claims.

### B. Plaintiffs' Fraud Claims Meet Rule 9(b) Requirements

The Complaint satisfies Rule 9(b)'s heightened pleading requirements for fraud by

detailing specific misrepresentations made by the Smith Defendants with particularity.[3] Under

*REI Holdings, LLC v. LienClear*, *2019 WL 3546881 (D. Del.),* fraud claims must specify the

who, what, when, where and how of the alleged misconduct. Shannon's fraudulent conduct is

detailed through her specific communications with the company bookkeeper. *Am. Compl.* ¶¶

257-262. The Complaint identifies precise dates and content of these communications, including

her June 27, 2023, text messages to the bookkeeper and her August 7, 2023, transmission of a

fraudulent Board Resolution purporting to remove Cooper from the companies. *Id*. at ¶ 261. The

Complaint also alleges that on August 7, 2023, she transmitted a "Board Resolution of

---

[3] For Shannon Smith-Crowley: Fourth Cause of Action (Fraud and Fraudulent Inducement), *Am. Compl.* ¶¶ 380-385, alleging fraudulent statements and misrepresentations including her post-termination wire communications seeking conversion of company bank accounts, delivery of illegitimate Board Resolutions, and false representations about Cooper's termination. For Cole Smith-Crowley: Fourth Cause of Action (Fraud and Fraudulent Inducement), *Am. Compl.* ¶¶ 786-791, alleging fraudulent statements including his conduct knowing his hiring was without Cooper's knowledge or consent, his demands that Cooper hand over investor relations to him, and his representation that Cooper should rely on his and Bellasalma's advice because "they knew what was best for [him]."

Airlock389 Bank Account and Other Matters Duly Passed on June 12, 2023" along with an "Action by Written Consent of Stockholders Airlock389 Inc." declaring that Cooper was removed from all officer/director positions. *Id.* at ¶ 261. The following day, on August 8, 2023, she escalated her fraudulent conduct by emailing the bookkeeper stating that "Chris has been terminated both as CEO and as President/Officer" and unlawfully threatening that they would "take legal action if you don't comply with our repeated requests." *Id.* at ¶ 262.

The Amended Complaint also identifies Cole Smith-Crowley's specific fraudulent statements at ¶¶ 172-173, where during a phone call with Cooper, he stated that "Bellasalma had just hired him to be the investor relations person" and demanded that Cooper "hand over all investor relations to him." During this same conversation, Cole Smith-Crowley told Cooper that "he had just finished law school and had an MBA, and that Bellasalma is also an attorney, and that he should rely on their advice because they knew what was best for me."

These fraudulent statements are further detailed at ¶ 788(a)-(b) of the Amended Complaint, which specifically alleges Cole Smith-Crowley's "conduct, knowing that his alleged hiring was without Cooper's knowledge, approval, or consent" and his "representation that Cooper should rely on the advice provided by him and Bellasalma because 'they knew what was best for [him].'" The timing and context of these statements are established in *Id.* at ¶ 172, which indicates this conversation occurred when "Cooper reached out by phone to her son …" after "many attempts to get Shannon on the phone."

The scienter element is supported by allegations in the Amended Complaint demonstrating the defendants knew their statements were false when made. Shannon knew she lacked legitimate authority when attempting to redirect the Chemglass Life Sciences overpayment check in October 2023, as evidenced by her status as a "then-terminated advisor."

*Id.* at ¶ 263. Her knowledge is further demonstrated by her threatening communications to the bookkeeper, including her August 8, 2023, email falsely claiming "Chris has been terminated both as CEO and as President/Officer" while demanding access to corporate records and threatening legal action. *Id.* at ¶ 262. Similarly, Cole's knowledge of the falsity of his statements is evidenced by his admission that "Bellasalma had just hired him" while demanding Cooper transfer control of investor relations, knowing this hiring was "without Cooper's knowledge, approval, or consent." *Id*. at ¶¶ 172, 788(a). His scienter is further demonstrated by his participation in the June 13, 2023 "Action by Written Consent" as Secretary while previously participating in unauthorized meetings regarding corporate restructuring, including the April 11, 2023, meeting where he joined attempts to pressure Cooper to relinquish control. *Id.* at ¶¶ 175, 200-202, 241.

This case is distinguishable from *Wood v. Coastal States Gas Corp.,* 401 A.2d 932 (Del. 1979), where fraud claims failed for lack of specificity. Here, the Complaint provides detailed allegations of each defendant's specific misrepresentations, including dates, content, and context of the fraudulent statements. The coordinated nature of their actions, including the Law Office of Blane A. Smith's support through provision of office space, demonstrates the requisite fraudulent intent.

### C. Legal Malpractice Claims Are Timely and Viable

The legal malpractice claims are governed by California law because the alleged legal services and malpractice occurred in California, as demonstrated by Shannon Smith-Crowley's provision of legal services at her Sacramento law office where she represented she would "serve as his attorney" and use her "legal skills to vet and filter interested parties." *Am. Compl.* ¶¶ 30,

32.[4] Under California law, legal malpractice claims must be brought within one year of actual or constructive discovery, or four years after the wrongful act, whichever occurs first, as established in *Foxborough v. Van Atta*, 26 Cal. App.4th 217, 224 (Cal. App. 1994). However, the continuous representation doctrine tolls the statute of limitations when an attorney continues to represent the client regarding the specific subject matter. See *Engel v. Pech*, 95 Cal. App.5th 1227, 1241 (Cal. App. 2d 2023). The continuous representation doctrine applies here because Shannon Smith-Crowley continued her involvement well into, and through 2023, as evidenced by her ongoing assertions of authority over corporate matters, including her June 27, 2023, communications with the company bookkeeper regarding bank access, her August 7, 2023 transmission of the purported Board Resolution, and her October 2023 redirection of the Chemglass Life Sciences payment. *Id.* at ¶¶ 257, 261, 263. There is no record of any time subsequent to the October 2023 redirection of the payment, whereby her alleged involvement was abandoned for purposes of the statute. Shannon's ongoing involvement demonstrates an unbroken chain of legal representation that tolls the statute of limitations under California's continuous representation doctrine. *Id.* at ¶¶ 257-263.

Cole's malpractice liability stems from his provision of unauthorized legal advice despite his recent graduation. The Complaint specifically alleges that he advised Cooper to "rely on their advice because they knew what was best for [him]" while touting his law degree and MBA

---

[4] For Shannon Smith-Crowley: Sixth Cause of Action (Civil Legal Malpractice), *Am. Compl.* ¶¶ 393-398, alleging breach of professional duties through misrepresentations about providing legal services without a retainer agreement, failure to conduct due diligence on recommended business associates, and post-termination attempts to exercise control over corporate assets through abuse of her law license. For Cole Smith-Crowley: Sixth Cause of Action (Civil Legal Malpractice), *Am. Compl.* ¶¶ 799-804, alleging breach of professional duties through demanding Cooper hand over investor relations despite knowing his employment was unauthorized, misrepresenting that Cooper should rely on his and Bellasalma's advice because "they knew what was best for [him]," and participating in the fraudulent June 13, 2023, Action by Written Consent.

qualifications, and his actions as a purported corporate officer referenced in the June 13, 2023 "Action by Written Consent" resolution. *Id.* at ¶¶ 172, 241. Similarly, there is no record of any time prior, or subsequent to said activities, whereby his alleged involvement was abandoned for the purposes of the statute.

This case is distinguishable from *Canterbury Women's Health Care, Inc. v. Rucker*, *2006 WL 3477779 (Cal. Super.), aff'd, 2007 WL 2834603 (Cal. App. 1st),* where mere introductions to other professionals were insufficient for malpractice. Here, the Smith Defendants actively participated in unauthorized corporate actions while purporting to provide legal services and advice extending far beyond mere "introductions to other professionals."

### D. Civil Conspiracy is Properly Alleged

The Complaint adequately pleads civil conspiracy by detailing specific overt acts and coordinated conduct by the Smith Defendants in furtherance of the scheme to seize control of the Delaware corporations.[5] The elements of civil conspiracy require a confederation of two or more persons, unlawful acts in furtherance of the conspiracy, and actual damages. *Rader v. ShareBuilder Corp.*, 772 F. Supp.2d 599, 605 (D. Del. 2011). The confederation element is demonstrated through the Smith Defendants' coordinated participation in the June 13, 2023 "Action by Written Consent," where Shannon and Cole simultaneously assumed unauthorized

---

[5] For Shannon Smith-Crowley: Eighth Cause of Action (Civil Conspiracy), *Am. Compl.* ¶¶ 404-410, alleging participation in coordinated scheme with Bellasalma and other defendants to defraud Individual Plaintiff and Corporate Plaintiffs through unauthorized corporate actions, cyber-attacks, conversion of assets, and wire fraud. For Cole Smith-Crowley: Seventh Cause of Action (Civil Conspiracy), *Am. Compl.* ¶¶ 805-811, alleging coordinated participation with Bellasalma and other defendants in scheme to defraud Plaintiffs through unauthorized corporate actions, misappropriation of property, and wire fraud. For Blane A. Smith: Second Cause of Action (Civil Conspiracy), *Am. Compl.* ¶¶ 902-908, alleging participation in coordinated scheme to defraud Plaintiffs through provision of office space and services to further unauthorized corporate actions.

positions as Treasurer and Secretary, while the Law Office of Blane A. Smith provided their office address to facilitate the scheme. *Am. Compl.* ¶¶ 241, 267.

The Complaint details specific overt and unlawful acts by Shannon, including her redirection of corporate payments, unlawful communications threatening the company bookkeeper with litigation, and her fraudulent transmission of an unauthorized Board Resolution claiming Cooper's removal. *Id.* at ¶¶ 241, 267.

The coordinated nature of their actions is further demonstrated through Cole Smith-Crowley's statements linking his authority to Bellasalma, telling Cooper that "Bellasalma had just hired him" and that Cooper should rely on their advice because "they knew what was best for him." *Id.* at ¶¶ 172-173.  The Amended Complaint specifically alleges coordination between the Smith Defendants and other conspirators, particularly through their relationship with Bellasalma. Cole advised Cooper that "Bellasalma had just hired him" and that Cooper should rely on their advice because "they knew what was best for [him]." Shannon's efforts to redirect corporate payments and access financial records were coordinated with broader attempts to seize corporate control. *Id.* at ¶¶ 257-250.

Resulting damages are specifically alleged through the diversion of corporate revenues, interference with banking relationships, and unauthorized payments including the redirection of the Chemglass Life Sciences overpayment check. *Id.* at ¶¶ 257-259, 261-263. The coordinated actions caused direct and undeniable *prima facie* financial harm to the Corporate Plaintiffs through disruption of corporate governance and misappropriation of assets. Unlike *ANI Pharm., Inc. v. Method Pharm.*, 2019 WL 176339 (D. Del.), where parallel business conduct was insufficient to establish conspiracy, here the Complaint details specific coordinated actions among the Smith Defendants that satisfy the elements of civil conspiracy under *Rader v.*

*ShareBuilder Corp.*, 772 F. Supp.2d 599, 605 (D. Del. 2011), while demonstrating particularly egregious conduct through the abuse of their law licenses to further the unlawful scheme.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Smith Defendants' Motion to Dismiss in its entirety. In the alternative, pursuant to Fed. R. Civ. P. 15(a)(2), should the Court find any deficiencies in the pleading of Plaintiffs' claims, Plaintiffs respectfully request leave to amend the Complaint to address such deficiencies. Amendment would not be futile given the substantial factual basis for Plaintiffs' claims as described *supra*. The Third Circuit has consistently held that leave to amend should be freely given when justice so requires, particularly at this early stage of litigation where Plaintiffs can cure any technical pleading deficiencies while preserving their right to pursue these meritorious claims. *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Respectfully Submitted,

*/s/ Antranig Garibian*

By:    Antranig Garibian, Esq. (DE Bar 4962)
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 722-6885
ag@garibianlaw.com
*Attorneys for Plaintiffs*

*/s/ James A.Wolff* (Pro Hac Vice)
Warshaw Burstein, LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
212-984-7795
jwolff@wbny.com
*Attorneys for Plaintiffs*